**In re Kenneth and Lois PAGNAC, Debtors.**

**Bankruptcy No. 97–60750.**

United States Bankruptcy Court, D. Minnesota, Sixth Division.

July 31, 1998.

Michael Ruffenach, Bemidji, MN, for Debtors.

## ORDER

DENNIS D. O'BRIEN, Chief Judge.

This matter came before the Court on the Debtors' Objection to the Claim of the Minnesota Department of Revenue. The Trustee joined in the Debtors' Objection. Also before the Court is the Department of Revenue's Motion to Dismiss or Convert. Appearances are as noted in the record. This ORDER is made based on the Federal and Local Rules of Bankruptcy Procedure.

## I.

### FACTS

On July 6, 1992, the Debtors filed for bankruptcy under Chapter 12. On December 29, 1992, the Debtors' Chapter 12 plan was confirmed. On April 15, 1993, the Debtors filed their 1992 Minnesota income tax returns showing an amount owing of $12,-591.36. The tax resulted from the conveyance of real estate and farm machinery to secured creditors as part of their Chapter 12 plan. The Minnesota Department of Revenue did not seek to have this tax debt treated as an administrative expense during the Chapter 12 proceeding. The Debtors failed to pay any portion to the Department of Revenue during the pendency of the Chapter 12 case. The Debtors received their Chapter 12 discharge on June 10, 1996.

On August 5, 1997, the Debtors filed for bankruptcy under Chapter 13. Their Chapter 13 plan was confirmed on September 23, 1997. On December 5, 1997, the Department of Revenue timely filed a 11 U.S.C. § 1322(a)(2) priority claim in the amount of $16,634.81 based on the Debtors' 1992 tax liability. The Department of Revenue asserts that its claim is for a 11 U.S.C. § 507(a)(8)(A)(i) tax; a tax measured by income for a pre-petition taxable year for which a return was due within three years before filing of the petition. The Department of Revenue argues that its claim is entitled to priority status because the period in which the Department of Revenue could collect was tolled during the Chapter 12 case; and, when factoring in the tolling period, the tax debt fell within the three year reach back period of 11 U.S.C. § 507(a)(8)(A)(i).

The Debtors objected to the Department of Revenue's proof of claim. They assert that during the Chapter 12 proceeding the Department of Revenue had remedies, such as objecting to the plan or seeking relief from the automatic stay; and, the failure to assert those remedies prohibits the tolling of the three year reach back period. The Trustee joins in the Debtors' objection.

The Department of Revenue also filed a Motion to Covert or Dismiss the Chapter 13 case based on the Debtors lack of good faith in filing the Chapter 13 case after the Chapter 12, and the failure to provide for payment of its priority claim in the plan. The Debtors assert that the Department of Revenue should have raised the bad faith argument at the confirmation hearing and is not entitled to raise the issue at this time. Alternatively, the Debtors argue that the plan has been proposed in good faith and should not be dismissed or converted.

## II.

### DISCUSSION

### A. TOLLING

11 U.S.C. § 1322 provides in part:

(a) The plan shall—

> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to different treatment of such claim . . .

The issue presented is whether the Department of Revenue's claim is entitled to full payment as a priority under 11 U.S.C. § 1322(a)(2) by reason of being a tax described in 11 U.S.C. § 507(a)(8). In order for the claim to be entitled to priority, it is necessary to determine whether the three year reach back period of 11 U.S.C. § 507(a)(8)(A)(i) is tolled during a prior bankruptcy proceeding when the tax arose during the pendency of that bankruptcy proceeding. The Department of Revenue asserts that its claim for 1992 taxes is entitled to priority status because it was prohibited from collecting those taxes during the Chapter 12 case, thereby tolling the reach back period of 11 U.S.C. § 507(a)(8)(A)(i). The Debtors argue that the period should not be tolled because the Department of Revenue failed to assert the rights and remedies it possessed during the Chapter 12 proceeding, such as objecting to the plan or seeking relief from the automatic stay.

11 U.S.C. § 507(a)(8)(A)(i) provides:

(a) The following expenses and claims have priority in the following order:

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition

■ The Bankruptcy Code does not contain any provisions which explicitly toll the three year reach back period of 11 U.S.C. § 507(a)(8)(A)(i). *In re Waugh,* 109 F.3d 489, 492 (8th Cir.1997). However, courts have found that the period is tolled during the pendency of a prior bankruptcy petition where the taxes arose pre-petition of the prior bankruptcy, based on 11 U.S.C. § 108(c) and 26 U.S.C. § 6503 of the Internal Revenue Code. *In re Waugh,* 109 F.3d 489 (8th Cir.1997); *In re West,* 5 F.3d 423, (9th Cir.1993); *In re Montoya,* 965 F.2d 554 (7th Cir.1992).

11 U.S.C. § 108(c) provides:

(c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

26 U.S.C. § 6503 is entitled, "Suspension of running of period of limitation" and provides in relevant part:

(b) **Assets of taxpayer in control or custody of court.**—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

\* \* \* \* \* \*

(h) **Cases under title 11 of the United States Code.**—The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

(1) for assessment, 60 days thereafter, and

(2) for collection, 6 months thereafter.

Based on these statutory provisions, the general rule is that the three-year reach back period of 11 U.S.C. § 507(a)(8)(A)(i) is suspended during the time that the automatic stay prevented the taxing authority from collecting outstanding pre-petition tax debts.[1] *In re Waugh,* 109 F.3d at 493. However, this case involves taxes that arose during the pendency of the prior bankruptcy case, not pre-petition to the prior bankruptcy. The issue then is the applicability of the general

---

1. At issue in this case is not 26 U.S.C. § 6503 of the Internal Revenue Code, but instead Minn. Stat. § 289A.41 entitled "Bankruptcy; suspension of time" which is similar to § 6503. It provides:

The running of the period during which a tax must be assessed or collection proceedings commenced is suspended during the period from the date of a filing of a petition in bankruptcy until 30 days after either notice to the commissioner of revenue that the bankruptcy proceedings have been closed or dismissed, or the automatic stay has been terminated or has expired, whichever occurs first. The suspension of the statute of limitations under this section applies to the person the petition in bankruptcy is filed against and other persons who may also be wholly or partially liable for the tax.

rule of *Waugh* to taxes arising during the pendency of the prior bankruptcy case.

### 1. *The Waugh holding extends to post-petition taxes.*

■ The Department of Revenue asserts that the *Waugh* rule should be extended to apply to post-petition taxes. The Debtors argue that *Waugh* does not apply as its holding is strictly limited to taxes arising pre-petition of a prior bankruptcy case.

Authority exists for the position that the *Waugh* holding also applies to toll the three-year reach back period of 11 U.S.C. § 507(a)(8)(A)(i) in cases involving post-petition taxes incurred during the pendency of the first bankruptcy case. *In re Occhipinti*, 80 A.F.T.R.2d 97–8324, 1997 WL 837627 (Bankr.E.D.Fla.1997), involved a situation where the Chapter 13 plan was confirmed and a discharge was subsequently entered. However, federal income taxes that came due during the pending Chapter 13 case were not paid. Three months after receiving their discharge, the debtors filed another Chapter 13 case. The issue was whether the taxes that came due during the prior Chapter 13 case were entitled to priority. But for application of the tolling rule during pendency of the earlier case, the tax debt would have been outside the three year priority period applicable to the later filing. The court held:

> Although it is true that the cases upon which the government relies dealt with suspending the priority period for liabilities that were pre-petition in the prior case, their reasoning applies equally to a situation, such as this one, in which the liabilities in dispute were post-petition in the prior case.

*In re Occhipinti*, 80 A.F.T.R.2d 97–8324.

Essential to the holding was the fact that the automatic stay precluded the government from pursuing its collection activities during the pendency of the prior bankruptcy case. The court also found that even though the government "could have asserted these [post-petition] taxes in the prior bankruptcy case but did not do so constitutes no reason not to apply the rule represented by the weight of authorities." *In re Occhipinti*, 80 A.F.T.R.2d 97–8324.

*In re Cowen*, 207 B.R. 207 (Bankr.E.D.Cal. 1997), involved a situation where the debtors' Chapter 13 case, which was dismissed, was followed by a second Chapter 13 case approximately two years later. The taxes at issue were federal taxes which came due during the pendency of the first Chapter 13 case, but before its dismissal. The court held that because the Internal Revenue Service was prohibited from collecting the post-petition taxes by reason of the automatic stay in the earlier case, the reach back period of 11 U.S.C. § 507(a)(8)(A)(i) should be tolled. *In re Cowen*, 207 B.R. at 211. The court also found that the Internal Revenue Service had no obligation to seek relief from the stay to enforce its collections rights in the prior bankruptcy. *In re Cowen*, 207 B.R. at 210.

This Court agrees with the holding in both *In re Occhipinti* and *In re Cowen* that the *Waugh* holding extends to permit tolling for post-petition taxes arising during a prior bankruptcy case where collection is stayed by the automatic stay.

### 2. *The Effect of the Automatic Stay.*

As the cases illustrate, the turning point of the tolling analysis is whether the Department of Revenue was prohibited from collecting the post-petition taxes through the automatic stay of 11 U.S.C. § 362. § 362(c) provides that:

> (c) Except as provided in subsections (d), (e), and (f) of this section—
>
> (1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of—
>
> \*　\*　\*　\*　\*　\*
>
> (C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

Property of the estate remained as such until the discharge was entered. While 11 U.S.C. § 1227(b) provides: "[e]xcept as oth-

erwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all the property of the estate in the debtor", the order confirming the Chapter 12 plan provided otherwise. Paragraph three of the order confirming provides that "all non-exempt property of the estate shall remain property of the estate until the court orders dismissal or conversion of the case or discharge of the debtor." The discharge was entered on June 10, 1996. Therefore, by virtue of the order confirming and § 362(c)(2)(C), the automatic stay remained in effect until June 10, 1996.

The next issue is whether the automatic stay actually applied to prohibit the Department of Revenue from collecting the 1992 taxes. The post-petition taxes arose in connection with the sale of assets as part of the Chapter 12 plan. Clearly, such taxes were entitled to administrative expense status pursuant to 11 U.S.C. § 503(b)(1)(B).[2] However, in order to be classified as an administrative expense, the party seeking the classification must make a motion pursuant to Local Rule 3002–2(b). The Department of Revenue made no such motion. Therefore, the claim should be treated as any other post-petition claim making it subject to the automatic stay during the pendency of the Chapter 12 proceeding. As the automatic stay was in place, the *Waugh* tolling rule applies, and the Department of Revenue's claim is entitled to 11 U.S.C. § 1322(a)(2) priority.

## B. MOTION TO DISMISS OR CONVERT

■ The Department of Revenue also made a motion to dismiss or convert the case pursuant to 11 U.S.C. § 1307(c). 11 U.S.C. § 1307 sets out the basis on which a Chapter 13 case can be dismissed or converted. It requires that dismissal or conversion be determined by what is in the best interests of creditors and the estate. The section also sets out situations constituting cause for dis-

missal or conversion, but the section is not meant to be exclusive. 11 U.S.C. § 1307(c)(6) allows for dismissal or conversion for a "material default by the debtor with respect to a term of a confirmed plan".

This Chapter 13 plan was confirmed on September 23, 1997. It provided in paragraph 3 that: "[t]he trustee shall pay in full all claims entitled to priority under § 507 . . ." The Debtors never listed the Department of Revenue's claim as a priority. Because the Department of Revenue's claim is entitled to priority in the amount of $16,-634.81, it must be paid in full under the plan.

The Debtors cannot pay the Department of Revenue's claim in full. The Debtors' Chapter 13 schedules list a total of $106,924.15 in liabilities. Only $23,612.00 is listed as secured and that is the mortgage on the Debtors homestead which was current at the time of the Chapter 13 filing. The remaining $83,312.15 of liabilities are classified by the Debtors as unsecured non-priority claims divided between two creditors: the Internal Revenue Service in the amount of $65,395.15; and, the Department of Revenue in the amount of $17,917.[3] The claim of the Internal Revenue Service has since been classified as secured pursuant to Court order dated June 24, 1998. The Debtors' Schedule J reveals monthly disposable income of only $33.99. Under the confirmed plan, the Debtors are paying $100 per month for a total of $3600. The confirmed plan will not pay the priority claim of the Department of Revenue in full; nor can the Debtors amend the plan to provide for payment in full. Therefore, it is in the best interests of creditors that this case be dismissed.

## III.

## DISPOSITION

Based on the foregoing analysis,

IT IS HEREBY ORDERED THAT:

2. 11 U.S.C. § 503(b)(1)(B) provides:
    (b) After notice and a hearing, there shall be allowed administrative expenses...
    (1)(B) any tax—
        (I) incurred by the estate, except a tax of a kind specified in section 507(a)(8).

3. The Department of Revenue filed a claim in the amount of $16,634.81. Both the claims of the Internal Revenue Service and the Department of Revenue are entirely based on income tax liability incurred in 1992 that was not paid by the Debtors under their Chapter 12 plan.

(1) The Minnesota Department of Revenue has an allowed 11 U.S.C. § 1322(a)(2) priority claim in the amount of $16,634.81; and the objections to the claim are overruled.

(2) This case is hereby DISMISSED.